2013 OK 9

**Daniel BOSH, Plaintiff,**

v.

**CHEROKEE COUNTY BUILDING AUTHORITY, et al.,
Defendant.**

**No. 111,037.**

Supreme Court of Oklahoma.

Feb. 12, 2013.

Rehearing Denied June 27, 2013.

As Corrected June 28, 2013.

J. Spencer Bryan, Steven J. Terrill, D. Mitchell Garrett Jr., Tulsa, Oklahoma, for Plaintiff.

Stephen L. Geries, Jamison C. Whitson, Oklahoma City, Oklahoma, for Defendant.

KAUGER, J.:

¶1 The United States District Court for the Eastern District of Oklahoma certified four questions of Oklahoma Law under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 §§ 1601–1611, seeking clarification concerning the remedies available to a plaintiff who brings an excessive force lawsuit pursuant to the Okla. Const. art. 2, § 30.[4] We have reformulated the questions into three.

## FACTS

¶2 We note at the onset, that the facts presented by the parties in this Court are very limited and offer very little detail. It appears that on May 17, 2011, jailers at the Cherokee County Detention Center, a jail facility operated by the Cherokee County Governmental Building Authority (the Authority) attacked the plaintiff, Daniel Bosh (detainee), while he was standing at the booking desk of the Detention Center with his hands secured in restraints behind his back. Presumably the detainee was being booked into the jail, but no explanation is offered as to why he was standing at the booking desk, why he was restrained, with what he was restrained, or what crime he was charged with, if any, or whether he had been convicted.

¶3 Nevertheless, video surveillance of the events captured images of one of the jailers, the defendant Gordon Chronister, Jr. (Chronister), approaching the detainee and grabbing him behind his back. Chronister then proceeded to slam the detainee's head into the booking desk by holding him from the back of the neck. He then placed the detainee's head underneath his arm and deliberately fell backwards causing the detainee to strike the crown of his head on the floor. Other jailers quickly joined the assault and moved the detainee to the showers, outside of the purview of video surveillance. The assault continued in other various off camera locations for an undisclosed amount of time. Afterwards, the jailers let the detainee languish in his cell for two days before taking him to treatment at a Tulsa hospital.

¶4 As a result of the attack, the detainee suffered a fracture of his vertebrae and had to undergo surgery to fuse several of the discs along his spinal cord. On September 29, 2011, the detainee filed a lawsuit in state court against the Authority, the assistant jail administrator and the jailers who initiated the attack. He asserted 42 U.S. § 1983 (Civil Rights) claims against the individuals and state law claims against the Authority. On October 24, 2011, the Authority removed the case to the United States District Court for the Eastern District of Oklahoma. On Octo-

---

4. The Okla. Const. art 2, § 30, see note 3, supra.

ber 31, 2011, the Authority filed a motion to dismiss the state tort claims based on exemptions from liability provided by Oklahoma Governmental Tort Claims Act, 51 O.S.2011 §§ 151 et seq. (the OGTCA).

¶ 5 On December 6, 2011, the federal court permitted additional briefing on the motion to dismiss based upon the Oklahoma Court of Civil Appeals opinion in *Bryson v. Oklahoma County ex. rel. Oklahoma County Det. Ctr.*, 2011 OK CIV APP 98, 261 P.3d 627 which was decided on August 30, 2011.[5] On April 5, 2012, the federal court granted the Authority's motion to dismiss the detainee's state tort claims based on the Act, but the court permitted the detainee to amend his complaint to assert a claim of excessive force under art. 2, § 30 of the Okla. Const.[6]

¶ 6 On April 20, 2012, the detainee amended his complaint and the Authority filed a second motion to dismiss. On August 30, 2012, the United States District Court for the Eastern District of Oklahoma certified the questions of law to be answered to this Court. The certified questions were filed in this Court on September 5, 2012, and the next day, we ordered the parties to brief the issues. The briefing schedule was completed on October 8, 2012.

**I.**

**THE OKLAHOMA CONSTITUTION, ART. 2, § 30 PROVIDES A PRIVATE CAUSE OF ACTION FOR EXCESSIVE FORCE NOTWITHSTANDING THE REQUIREMENTS/LIMITATIONS PROVIDED BY THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S.2011 §§ 151 ET SEQ.**

¶ 7 This controversy centers around the alleged conflict between the Oklahoma Constitution, which protects citizens of the State of Oklahoma from unreasonable seizures[7] and the OGTCA which appears to allow the state, or, in this case the Authority, to elude tort liability when its employees beat and injure a citizen who is detained at one of its facilities.[8]

¶ 8 The Authority acknowledges that a court may recognize private causes of action.[9] Nevertheless, it argues that it cannot be held liable for its employees who exert excessive force against detainees because the OGTCA immunizes it from any liability for the operation of any prison, jail or correctional facility.[10] The detainee contends that regardless of what the OGTCA immunizes, the Okla. Const. art. 2, § 30[11] protects citizens

---

5. In *Bryson v. Oklahoma County ex rel. Oklahoma County Det. Ctr.*, 2011 OK CIV APP 98, 261 P.3d 627, the Court of Civil Appeals in a similar cause in which a jail detainee was attacked by a detention officer held that the trial court had improperly granted summary judgment based upon the detainee's assertion of his federal civil rights 42 U.S.C. § 1983 claim based upon the alleged violation of the 4th Amendment to the United States Constitution and his claim based upon a violation of the Okla. Const. art. 2, § 30. The 4th Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The Okla. Const. art. 2, § 30, see note 3, supra.

6. Okla. Const. art. 2, § 30, see note 3, supra.

7. Okla. Const. art. 2, § 30, see note 3, supra.

8. Title 51 O.S. Supp.2012 § 155 provides in pertinent part:

The state or a political subdivision shall not be liable if a loss or claim results from:
. . .
24. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections; . . .
The relevant portions of the statute remain unchanged from the version in effect when the detainee's injuries occurred.

9. *See, Ohio Casualty Ins. Co. v. Todd*, 1991 OK 54, 813 P.2d 508.

10. Title 51 O.S. Supp.2012 § 155, see note 8, supra.

11. Okla. Const. art. 2, § 30, see note 3, supra.

from being physically abused by the employees of state and local entities that operate jails and correctional facilities, and such protection includes legal liability for such conduct.

¶ 9 Employers being held legally liable for the acts of their employees is nothing new. Under the common law doctrine of *respondeat superior* a principal or employer is generally held liable for the wilful acts of an agent or employee acting within the scope of the employment in furtherance of assigned duties.[12] The doctrine rests on the premise that the employer answers for an employee's conduct provided the employee was acting within the scope of employment.[13] An employer is liable for an employee's torts if the conduct was committed within the scope of employment.[14]

¶ 10 Employer liability extends when an employee's conduct is an assault of excessive force if the conduct also occurs within one's scope of employment.[15] Under the theory of *respondeat superior*, one acts within the scope of employment if engaged in work assigned, or if doing what is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.[16]

¶ 11 For example, in *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914, we addressed the question of whether a police officer was acting within the scope of employment and thus, whether the city was liable when the officer shoved an intoxicated 15–year–old who was handcuffed and not resisting arrest.[17] In *Nail*, the 15 year-old

12. *Schovanec v. Archdiocese of Oklahoma City*, 2008 OK 70, ¶ 5, 188 P.3d 158; *N.H. v. Presbyterian Church*, 1999 OK 88, ¶ 14, 998 P.2d 592.

13. *Bierman v. Aramark Refreshment Services, Inc.*, 2008 OK 29, ¶ 3, 198 P.3d 877. *Respondeat superior* is a Latin phrase that translates to "let the superior answer." *Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, ¶ 7, fn. 15, 81 P.3d 55. Under the doctrine, an employer is liable to the general public for acts of its employee, provided the employee was acting within the scope of employment. *State ex rel. Okla. Bar Ass'n v. Taylor*, 2000 OK 35, ¶ 19, fn. 31, 4 P.3d 1242.

14. *Baker v. Saint Francis Hospital*, 2005 OK 36, ¶ 10, 126 P.3d 602 [Employer may be liable where the act is incidental to and done in the furtherance of the business of the employer even though the servant or agent acted in excess of the authority or willfully or maliciously committed the wrongs.]; *Ada–Konawa Bridge Co. v. Cargo*, 1932 OK 790, ¶ 31, 163 Okla. 122, 21 P.2d 1. An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer. *Rodebush By & Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 12, 867 P.2d 1241.

15. In *N.H. v. Presbyterian Church*, see note 12, supra, where we held that even a wilful assault can be within the scope of employment if: 1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business. See also, *Bierman v. Aramark Refreshment Services, Inc.*, see note 13, supra, which, although not an assault, the Court of Appeals decision that a negligent and drunk driver's determination that the accident occurred within the scope of employment was upheld on basis of res judicata.

16. *Tuffy's Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 7, 212 P.3d 1158; *DeCorte v. Robinson*, 1998 OK 87, ¶ 12, 969 P.2d 358; *Nail v. City of Henryetta*, 1996 OK 12, ¶ 11, 911 P.2d 914.

17. The predecessors to *Nail v. City of Henryetta*, see note 16, supra, were *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065 and *Holman By and Through Holman v. Wheeler*, 1983 OK 72, 677 P.2d 645. Neither of these cases were dispositive of Nail's claim. In *Parker*, supra, this Court addressed the question of whether a municipality may be immunized from liability for a malicious prosecution action under the OGTCA. We recognized that generally: 1) individual employees are immunized from tort liability when they act within the scope of employment; 2) a municipality is not liable for any act or omission of an employee acting outside the scope of employment; and 3) the scope of employment is defined as the performance of an employee acting in good faith within the duties of office or employment or of tasks lawfully assigned. We noted that an employee could not be acting within the scope of employment if the employee acted maliciously, or in bad faith. Because a claim for malicious prosecution included elements of bad faith, we held that the municipality was immunized from liability under the OGTCA, and that only the individual police officer could be held liable in tort. In *Holman*, supra, a ten-year-old brought a tort action against a school superintendent, alleging that the superintendent violently and in a fit of intoxicated rage, spanked and beat the child with excessive force. The superintendent countered that: 1) his acts and conduct

brought suit against city, alleging that its employee, the arresting officer, injured him either intentionally and maliciously or negligently by excessive force.

¶ 12 We said that:

As a general rule, it is not within the scope of an employee's employment to commit an assault on a third person. However, this general rule does not apply when the act is one which is 'fairly and naturally incident to the business,' and is done 'while the servant was engaged upon the master's business and be done, although mistakenly or ill advised, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business.' An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer. (Citations omitted.)

¶ 13 This rationale has been illustrated in at least 100 years of Oklahoma's caselaw. In *Baker v. Saint Francis Hospital*, 2005 OK 36, ¶ 18, 126 P.3d 602 a jury question was presented whether a daycare caregiver was acting within the scope of employment so as to hold her employer liable for intentionally striking a child's head on corner of shelf. The Court noted at ¶ 12 that:

Oklahoma case law provides examples of cases involving torts for which the employer was held liable and those in which the employer was not held liable. Early in statehood the Court held that a railroad company was liable for the actions of the train auditor, who falsely imprisoned a passenger arising out of a controversy over the payment of a fare. The Court stated the general rule that a corporation, like an individual, is liable for any tort committed by its agent in the course of his employment, "even though the act is done wantonly and recklessly, or was against the express orders of the company." *Chicago R.I. & P. Ry. Co. v. Radford*, 1913 OK 7, ¶ 4 [36 Okla. 657], 129 P. 834, 837. Other cases holding the employer liable for the tort of the employee include: *Ada–Konawa Bridge Co. v. Cargo*, 1932 OK 790 [163 Okla. 122], 21 P.2d 1 (the servant of the toll bridge company shot an automobile driver when he drove past the toll gate and failed to pay the toll); *Russell–Locke Super–Service v. Vaughn*, 1935 OK 90 [170 Okla. 377], 40 P.2d 1090 (the servant of a corporation selling and servicing automobile batteries injured the plaintiff in a fight after the servant tried to repossess a battery from the plaintiff's vehicle); *Mistletoe Express Service v. Culp*, 1959 OK 250, 353 P.2d 9 (the servant for a common carrier of freight assaulted the plaintiff when he refused to accept a television tube after the common carrier denied the plaintiff's claim for damage in transit); and *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241 (the employee of a nursing home forcefully slapped a combative male Alzheimer's patient while bathing the patient).[18]

---

while he was punishing the child were within the scope of his employment; and 2) because he was acting within the scope of employment, he was immune from individual liability under the Act. The *Holman* Court found that the governmental immunity afforded by the OGTCA does not extend to employees who act in a wilful or wanton manner while performing functions within the scope of employment. Accordingly, because the superintendent acted in a wilful and wanton manner, we held that he was not protected by the Act, and that he could be held individually liable in tort.

**18.** Other cases exist in which the employer was not held liable including: *Hill v. McQueen*, 1951 OK 47, 204 Okla. 394, 230 P.2d 483 (the manager of a seed company assaulted a former independent sales contractor after the two got into an argument over a disputed debt); *Oklahoma Ry.*

*Co. v. Sandford*, 1953 OK 394, 258 P.2d 604 (bus driver for bus company left his bus parked and assaulted the driver of an automobile and held him for arrest after the bus driver concluded he was drunk); *Tulsa General Drivers, Warehousemen, and Helpers Union, Local No. 523 v. Conley*, 1955 OK 277, 288 P.2d 750 (the agent of the union was picketing a business but left to follow the plaintiff four and one-half blocks to beat him with a board studded with nails, because he had crossed the picket line); *Allison v. Gilmore, Gardner & Kirk, Inc.*, 1960 OK 48, 350 P.2d 287 (a gasoline truck driver was employed by the defendant to drive a truck and deliver gasoline, and while fulfilling those duties, assaulted the plaintiff who was climbing on the gasoline truck); and *N.H. v. Presbyterian Church* (U.S.A.), 1999 OK 88, 998 P.2d 592 (A Presbyterian minister molested minors, including the plaintiff, during

¶ 14 However, different rules apply when the employer is a governmental entity. In Oklahoma, governmental entities were once protected from tort liability through the judicially created doctrine of governmental immunity.[19] In 1983, in *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, we abrogated the court created doctrine of governmental immunity and acknowledged the Legislature's right to enact sovereign immunity by statute.[20]

¶ 15 The Legislature's Political Subdivision Tort Claims Act, now known as the OGTCA, came to be known as the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort.[21] Subject to specific limitations and exceptions, governmental immunity was waived under the OGTCA and governmental accountability was extended to torts for which a private person would be liable, unless they were committed in bad faith or in a malicious manner.[22]

¶ 16 Under the OGTCA, the question for governmental employer liability continued to hinge on whether one acted within the scope of employment by engaging in work assigned, or if doing what was proper, necessary and usual to accomplish the work as-

signed, or doing that which was customary within the particular trade or business.[23] Consequently, governmental employees such as police officers, whether on duty or off duty, have been held to the possibility that conduct such as striking arrestees,[24] physically and verbally attacking customers of a private business,[25] causing a car accident,[26] or injuring detainees/arrestees,[27] may have occurred within the scope of employment subjecting their employers to liability.

¶ 17 However, here, the assault was committed not by a police officer, but by an employee of a detention center, and the OGTCA expressly immunizes the state and political subdivisions such as counties and municipalities from liability arising out of the operation of prison facilities.[28] This does not mean that injured tort victims are at the mercy of their captors to be beaten, assaulted, and left without medical attention without any remedy to deter such conduct.

¶ 18 In *Washington v. Barry*, 2002 OK 45, 55 P.3d 1036, this Court held that a private cause of action may exist for inmates to recover for excessive force under the provisions of the Okla. Const. art. 2, § 9 [29] and the 8th Amendment of the United States Consti-

recreational activities aimed at recruiting new members and their families).

19. *Fuller v. Odom*, 1987 OK 64, ¶ 3, 741 P.2d 449; *Vanderpool v. State*, 1983 OK 82, ¶¶ 7–9, 672 P.2d 1153.

20. *Fuller v. Odom*, see note 19, supra.

21. *Tuffy's, Inc. v. City of Oklahoma City*, see note 16, supra; *Teeter v. City of Edmond*, 2004 OK 5, ¶ 21, 85 P.3d 817; *Nail v. City of Henryetta*, see note 16, supra; *Fuller v. Odom*, see note 9, supra at ¶ 4.

22. *Tuffy's, Inc. v. City of Oklahoma City*, see note 16, supra; *Nail v. City of Henryetta*, see note 17, supra;

23. *Tuffy's Inc. v. City of Oklahoma City*, see note 16, supra; *DeCorte v. Robinson*, see note 16, supra; *Nail v. City of Henryetta;* see note 17, supra.

24. *DeCorte v. Robinson*, see note 16, supra at ¶ 13, involved the misconduct of an off duty police officer who helped arrest a civilian driver and struck the driver and grabbed him by the throat while he was handcuffed resulting in a herniated disk in his neck which required surgery. The jury's determination that these actions

were within the scope of employment were affirmed on appeal.

25. *Tuffy's, Inc. v. City of Oklahoma City*, see note 16, supra, held that a municipality is not immunized from a negligence claim based on its officers actions in the midst of law enforcement if the tortious acts were committed within the scope of employment. The officers in question allegedly attacked, harassed and assaulted customers at a nightclub.

26. *Fuller v. Odom*, see note 19, supra.

27. In *Morales v. City of Oklahoma City ex rel.Oklahoma City Police Dept.*, 2010 OK 9, ¶ 29, 230 P.3d 869, we held a fact question existed for a broken wrist and elbow allegedly sustained when the officer arrested a girl after a fight broke out in a school cafeteria. We noted that once an officer makes the decision to enforce a law by making an arrest, he or she must do so in a lawful manner.

28. Title 51 O.S. Supp.2012 § 155, see note 8, supra.

29. The Okla. Const. art. 2, § 9 provides:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.

tution [30]—despite the provisions of the OGT-CA.[31]

¶ 19 *Washington,* supra, involved a prisoner who alleged that he was injured when prison officials forcibly removed handcuffs and leg restraints from him. Thus the claim was for excessive force raised by a convicted prisoner in a penal institution. We addressed the existence of a cause of action for excessive force and the requirements a prisoner must meet to assert such a claim. We noted that our analysis differed significantly from prior cases involving pre-incarcerated individuals because plaintiffs who are not prisoners have significantly broader rights from the application of force by police officers making arrests than those who are incarcerated. Accordingly, a prisoner has a significantly greater burden to bear in establishing the right to a cause of action than does a person who is not incarcerated.

¶ 20 The Court further explained that: 1) the OGTCA barred the plaintiff's claims for assault and battery and intentional infliction of mental anguish and emotional distress; but 2) the nature of a claim made under the Oklahoma Constitution differs because a prisoner in a penal institution ordinarily has no right to recover for the use of excessive force by prison employees unless the force applied was so excessive that it violated the prisoner's right to be protected from the infliction of cruel or unusual punishment under the state and federal constitutions.

¶ 21 Though we held that the prisoner in *Washington,* supra, did not successfully state an actionable claim for excessive use of force by the defendant prison employees, we held such a potential cause of action existed in spite of the OGTCA. We also said that such a cause of action could also exist for persons who were not already incarcerated inmates, because they have significantly broader rights.

¶ 22 The Okla. Const. art. 2, § 30 applies to citizens who are seized—arrestees and pre-incarcerated detainees. In *Washington,* we declared that, not withstanding the provision of the OGTCA, a private action for excessive force exists pursuant to the Okla. Const. art 2, § 9 for incarcerated persons. Having done so, and having explained that those not yet convicted are assured of even greater rights, it would defy reason to hold that pre-incarcerated detainees and arrestees are not provided at least the same protections of their rights, the same cause of action for excessive force under the Okla. Const. art. 2, § 30.[32]

■ ¶ 23 The OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precedent which refused to construe the OGTCA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective, and a nullity. Therefore we answer the reformulated question and hold that the Okla. Const. art 2, § 30 provides a private cause of action for excessive force, notwithstanding the requirements and limitations of the OGTCA.[33]

## II. Retrospective.

■ ¶ 24 This is not new ground. We recognized a cause of action for excessive

---

**30.** The 8th Amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

**31.** Title 51 O.S. Supp.2012 § 155, see note 8, supra.

**32.** See, *Bozeman v. Orum,* 422 F.3d 1265, 1271 (11th Cir.2005) (The applicable standards for federal claims of excessive force apply the same, whether the victim was a pretrial detainee or a convicted prisoner. The standard is whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore

discipline or maliciously or sadistically for the very purpose of causing harm.).

**33.** In *Binette v. Sabo,* 244 Conn. 23, 45–46, 710 A.2d 688, 699 (Conn.1998) the Connecticut Supreme Court addressed a private, Constitutional right of action for money damages against officials stemming form alleged violations of search and seizure and arrest. Following the analysis of the United States Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) the Court recognized that compelling policy considerations favored the creation of a constitutional tort to ensure the citizens a remedy when their constitutional rights were violated by a police officer or similar actor.

force in *Washington v. Barry*, 2002 OK 45, 55 P.3d 1036, for prisoners. The Court of Civil Appeals first recognized that the cause of action should extend to pre-incarcerated detainees in *Bryson v. Oklahoma County*, 2011 OK CIV APP 98, 261 P.3d 627. Today, we recognize that the Court of Civil Appeals' Opinion followed the legal ground which had been plowed by our precedent in *Washington v. Barry*, 2002 OK 45, 55 P.3d 1036.[34]

 ¶ 25 The parties disagree whether our holding today should be applied retroactively, before the date of today's decision. This Court is neither prohibited from giving, nor compelled to give, judicial decisions retrospective operation.[35] Judicial policy determines whether, and to what extent, a new rule will operate retroactively.[36] We may give prospective operation to our announcements when necessary to avoid disruption and to allow a period for adjustment.[37] In making such a determination, we must consider: 1) the purpose of the new rule; 2) the extent of reliance on old doctrines; and 3) the burden likely to be imposed on administering the legal process due to additional litigation or curative actions.[38]

¶ 26 Today's holding was foreshadowed by our decision in *Washington v. Barry*, 2002

OK 45, 55 P.3d 1036. Recognizing today's holding retroactively will help to maintain a proper balance for law enforcement officials to constrain detainees as needed, but without using unnecessary excessive force that can cause permanent injuries to detainees. Retroactive application will only further and advance proper behavior.

¶ 27 No unfairness or undue hardship would be imposed upon the offending officials, but mere by prospective application would deprive detainees who have suffered injuries from recovering for those injuries. Virtually no inequity will result from retrospective application. Accordingly, we hold that today's decision shall be given retroactive application to all matters which were in the litigation pipeline, state and federal, when *Bryson v. Oklahoma County*, 2011 OK CIV APP 98, 261 P.3d 627 was decided as well as any claims which arose when *Bryson*, was decided.

### III.

### THE COMMON LAW THEORY OF *RESPONDEAT SUPERIOR* APPLIES TO SUCH ACTIONS.

 ¶ 28 The detainee argues that if a cause of action for excessive force is recog-

The availability of other remedies did not defeat such a claim. In contrast, the Supreme Court of Alaska in *State Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1093–94 (Alaska 2012) refused to recognize a state constitutional claim for excessive force by an inmate because such a claim was barred by the state's sovereign immunity and an alternative remedy of a § 1983 claim was available.

**34.** As our pronouncement in this case does not establish a new principle of law, the general rule of retroactive application to the date *Bryson*, *supra*, was decided, is appropriate. See *Sholer v. State ex rel. Department of Public Safety*, 1997 OK 89, 945 P.2d 469.

**35.** *Kruchowski v. Weyerhaeuser Co.*, 2008 OK 105, ¶ 26, 202 P.3d 144; *Resolution Trust Corp. v. Grant*, 1995 OK 68, ¶ 22, 901 P.2d 807; *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364–65, 53 S.Ct. 145, 77 L.Ed. 360 (1932). Neither the United States Constitution nor the Constitution of the State of Oklahoma delineate the effective date of judicial opinions.

**36.** *Kruchowski v. Weyerhaeuser Co.*, see note 34, supra; *Harry R. Carlile Trust v. Cotton Petroleum*, 1986 OK 16, ¶ 16, 732 P.2d 438, cert. denied 483

U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987).

**37.** *Kruchowski v. Weyerhaeuser Co.*, see note 34, supra; *Aple Auto Cash Express, Inc. v. State ex rel. Oklahoma Dept. of Consumer Credit*, 2003 OK 89, ¶ 20, fn. 27, 78 P.3d 1231; *Campbell v. White*, 1993 OK 89, ¶ 18, 856 P.2d 255. In *Great Northern Railway v. Sunburst Oil & Refining Co.*, see note 21, supra, a noncriminal cases involving no question of constitutional law, the Court developed the Sunburst Doctrine, holding that a state may choose for itself between the principle of relation back and forward operation of its precedents. *Globe Life and Acc. Ins. Co. v. Oklahoma Tax Com'n*, 1996 OK 39, ¶ 20, fn. 41, 913 P.2d 1322.

**38.** *Kruchowski v. Weyerhaeuser Co.*, see note 34, supra; *Resolution Trust Corp. v. Grant*, see note 34, supra; *Short v. Kiamichi Area Vo–Tech School*, 1988 OK 89, ¶ 19, 761 P.2d 472, cert. denied 489 U.S. 1066, 109 S.Ct. 1341, 103 L.Ed.2d 811 (1989); *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, see note 34, supra; *Thompson v. Presbyterian Hosp. Inc.*, 1982 OK 87, ¶ 33, 652 P.2d 260.

nized under the Okla. Const., there is no reason to import federal constitutional standards that have been applied to § 1983 civil rights actions to develop a body of state law. The Authority counters that although the Court does not have to so, it should adopt federal case law standards developed for § 1983 actions rather than to adopt a *respondeat superior* standard of government liability.

¶ 29 Assaults of excessive force can certainly occur within one's scope of employment.[39] Under 42 U.S.C. § 1983, *respondeat superior* does not serve as a basis for government liability.[40] Rather, other standards, depending on the conduct, are applied such as a governmental policy, custom, or direct participation by a governmental employer.[41] However, Oklahoma is not bound by the constraints of federal law when determining whether the doctrine of *respondeat superior* serves as a basis for municipal liability under a cause of action for excessive force pursuant to the Okla. Const. art 2, § 30.[42]

¶ 30 Oklahoma recognizes the application of the doctrine of *respondeat superior* to the OGTCA.[43] Indeed, in the context of law enforcement, we have taken pains to point out that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the OGTCA.[44]

---

39. In *N.H. v. Presbyterian Church*, see note 25, supra where we held that even a wilful assault can be within the scope of employment if: 1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business. See also, *Bierman v. Aramark Refreshment Services, Inc.*, see note 26, supra, which, although not an assault, the Court of Appeals decision that a negligent and drunk driver's determination that the accident occurred within the scope of employment was upheld on basis of res judicata.

40. *Barnthouse v. City of Edmond*, 2003 OK 42, ¶ 30, 73 P.3d 840 cert. denied *Cochran v. Barnthouse*, 540 U.S. 981, 124 S.Ct. 464, 157 L.Ed.2d 371 (2003); *Brander's Club, Inc. v. City of Lawton*, 1996 OK 66, 918 P.2d 69, ¶ 11, 918 P.2d 69; *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 731, 109 S.Ct. 2702, 2721, 105 L.Ed.2d 598 (1989); *Monell v. City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

41. See also, *Estate of Crowell v. Board of County Commissioners of County of Cleveland*, 2010 OK 5, 237 P.3d 134 (Recognizing that a § 1983 action for the failure of prison officials to respond to an inmates medical attention requires the establishment of a deliberate indifference on the part of the employer.); *Seiler v. City of Bethany*, 1987 OK CIV APP 77, 746 P.2d 699 (Civil rights action required plaintiff to establish municipality had a policy of deliberate indifference before recovery could be had concerning alleged negligence in detainee's suicide.); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (Deliberate indifference to prisoner's serious illness or injury constitutes cruel and unusual punishment.).

42. The Okla. Const. art 2 § 30, see note 3, supra. Our holding is based on Oklahoma law which provides bona fide, separate, adequate and independent grounds for our decision. *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983). State statutes or state constitutions which afford greater rights than the federal constitution must be determined by following state law. The state of Oklahoma in the exercise of its sovereign power may provide more expansive individual liberties than those conferred by the United States Constitution—it is only when state law provides less protection that the question must be determined by federal law. The Constitution of the State of Oklahoma contains independent sources of rights and liberties, which may, under some circumstances, offer more protection than the federal constitution. The Oklahoma Constitution does not merely project a mirror image of the federal constitution. The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it speaks for every person as the supreme law and final authority for everything which is done in pursuance of its provisions. *Turner v. City of Lawton*, 1986 OK 51, ¶ 10, 733 P.2d 375.

43. *Tuffy's, Inc. v. City of Oklahoma City*, see note 16, supra; *Speight v. Presley*, 2008 OK 99, ¶13, 2013 P.3d 173 (2008) see note 16, supra; *DeCorte v. Robinson*, see note 16, supra; *Nail v. City of Henryetta* see note 16, supra.

44. *Morales v. City of Oklahoma City*, see note 27, supra [If a tort is committed in the process of making an arrest, § 155(4) does not provide immunity from suit to the officer's government employer for the resulting damages.]; *Tuffy's Inc. v. City of Oklahoma City*, see note 16, supra at ¶ 20 [To construe § 155(4) as providing blanket immunity to political subdivisions for any claim arising from law enforcement would not conform to established precedent. We have consistently held that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the OGTCA.].

¶ 31 In other contexts, the scope of employment has included assaults with excessive force. For example: *Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 12, 867 P.2d 1241 [Intoxicated nurse's aide slapping Alzheimer's patient was acting within the scope of employment.]; *Mistletoe Express Serv. v. Culp.*, 1959 OK 250, ¶ 31, 353 P.2d 9 [Assault on customer by a truck driver within scope of employment.]; *Brayton v. Carter*, 1945 OK 289, ¶ 10, 196 Okla. 125, 163 P.2d 960 [Automobile accident within scope of employment even though occurred twenty-eight miles out of the way.]; *Corn v. City of Sapulpa*, 1941 OK 44, ¶ 4, 188 Okla. 418, 110 P.2d 290 [Allegations withstood demurrer that employee could be acting within scope of employment even though he made an illegal u-turn while assigned to a task for employer]; *Patsy Oil & Gas Co. v. Odom*, 1939 OK 341, ¶ 28, 186 Okla. 116, 96 P.2d 302 [Employer held responsible for employee's taking dynamite caps to well even though employer had not authorized use of dynamite.].

¶ 32 Although a claim for excessive force under the Okla. Const. art 2, § 30 does not arise from the OGTCA, there is no reason why the doctrine of *respondeat superior* should not apply to hold employers liable for their employees violations of a plaintiff's rights under art. 2, § 30 where the employees act within the scope of their employment.[45] The problems of federalism which preclude the application of *respondeat superior* to § 1983 actions are obviously not present when the action is for a violation of a state's constitution.[46] Consequently, the common law doctrine of *respondeat superior* in tort litigation should apply under State law to municipal corporations. Accordingly, we hold that in an action pursuant to the Okla. Const. art 2, § 30, *respondeat superior* applies to hold municipal corporations liable for the actions of their employees where those employees are acting within the scope of their employment.

## QUESTIONS ANSWERED.

¶ 33 The Okla. Const. art 2, § 30 provides a private cause of action for excessive force, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, 51 O.S.2011 §§ 151 et seq. This action is recognized retrospectively. The common law theory of *respondeat superior* applies to municipal liability under such an action to determine when an employee of a municipality uses excessive force within the scope of employment.

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, and GURICH, JJ., concur.

WINCHESTER, TAYLOR, JJ., dissent.

**45.** Although the term *respondeat superior* is not expressly used, Illinois, another state which has also abrogated sovereign immunity for tort actions against municipalities, determined in *Newell v. City of Elgin*, 34 Ill.App.3d 719, 723, 340 N.E.2d 344, 348 (Ill.App.1976), that a motorist injured during a high speed chase stated an action against the municipality noting that the officers were obviously acting in the execution or enforcement of law and that they were the agents and employees of the municipality.

**46.** *Monell v. City of New York*, see note 39, supra at 691–694, 98 S.Ct. 2018 for a discussion of the problems of federalism and the interpretation of the express language of § 1983 which preclude a federal recognition of the application of *respondeat superior* to § 1983 actions.